UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


FRANK LOMBARDO                          CIVIL ACTION


VERSUS                                  NO: 09-512


STATE FARM MUTUAL AUTOMOBILE            SECTION: J(5)
INSURANCE COMPANY ET AL


## ORDER AND REASONS

Before the Court is Defendant State Farm Fire and Casualty
Company's **Motion in Limine to Exclude Purported Expert Stephen
Hitchcock as Unqualified, Unreliable and Irrelevant (Rec. Doc.
34)** and Plaintiff Frank Lombardo's **Response Memorandum in
Opposition (Rec. Doc. 56)**.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This action involves a claim against State Farm
("Defendant") for additional insurance benefits and statutory
damages resulting from alleged underpayment of proceeds to
Plaintiff for his property, which was insured by Defendant.

This action is one of hundreds of Hurricane Katrina
insurance coverage disputes brought against State Farm by the
Hurricane Legal Center ("HLC") in August of 2007.  Originally,
these suits were included in a mass joinder suit entitled <u>Aguda</u>

1

v. State Farm Fire & Casualty Insurance Company, No. 07-4457.
These suits underwent numerous procedural steps as the actions
were consolidated with the Katrina Canal Breaches Consolidated
Litigation, 05-4182, subsequently deconsolidated, and eventually
severed from one another on December 30, 2008 with the remaining
plaintiffs ordered to file an individualized complaint.

Plaintiff allegedly suffered property damage due to the wind
and flood caused by Hurricane Katrina. Following Hurricane
Katrina, Defendant issued payments to Plaintiff based on
Defendant's assessment of damage to the property due to wind
and/or wind driven rain. Subsequent to these initial payments,
the parties engaged in additional discussions which led to
Defendant increasing its estimate of damage and issuing
additional payments to Plaintiff in April of 2006. Nevertheless,
Plaintiff apparently disagreed with the revised estimates and
filed suit against Defendant in August of 2007.

In an effort to combat the alleged low assessment of damage
provided by Defendant, and to get an estimate of what Plaintiff
felt was the true damage to his property, Plaintiff sought the
services of Stephen Hitchcock ("Hitchcock"). Although Hitchcock
was able to conduct a thorough inspection of the property, his
inspection was limited because a substantial amount of the
property had already been repaired. Nevertheless, Hitchcock
prepared an estimate of the wind and/or wind driven rain damage

2

to the property based on this inspection, as well as his interview with the property owner, and an inspection of photographs of the property.

Defendant believes that Hitchcock is unqualified and that his testimony should be excluded as unreliable and irrelevant. Defendant has therefore filed this motion in limine, asking this Court to exclude Hitchcock's testimony. After reviewing the record, file, applicable law, and the parties motions and memoranda, this Court finds as follows:

## **THE PARTIES' ARGUMENTS**

Defendant claims that Hitchcock does not possess the qualifications necessary to support a finding that he qualifies as an expert in this case. Defendant further claims that the methodology used by Hitchcock is unreliable and that the information provided by Hitchcock is irrelevant. Defendant makes these claims because first, according to Defendant, a contractor cannot provide an estimate of damage caused by wind and/or wind driven rain, as opposed to damage by flood, without being an engineer, meteorologist, or a member in some other field that possesses knowledge as to the determination of cause of damage to property. Secondly, Defendant claims that Hitchcock's methodology is unreliable because some courts have previously excluded Hitchcock's methodology as unreliable. Lastly, Defendant argues that Hitchcock's methods are irrelevant because

Hitchcock offers an estimate of repairing damage to the property without taking into consideration the actual costs expended by Plaintiff in repairing the property.

Plaintiff argues that Hitchcock, as a licensed contractor has the ability to determine the difference between damage caused by wind and/or wind driven rain, as opposed to damage caused by flood. Plaintiff also argues that in considering the methodology used by an expert, a court must examine each case and factual pattern on its own merits and not exclude an expert's testimony simply because another court has previously held that the purported expert used unreliable methods in the past. Finally, Plaintiff argues that Defendant's insurance policy allows for recovery of the estimated damage to the property and therefore, even if Hitchcock did not consider the amount of the actual repairs, his testimony, which is based on the estimate costs of repairs, is relevant.

## DISCUSSION

Although Defendant makes many arguments as to why Hitchcock's testimony should be excluded, the argument regarding the reliability of his methodology is dispositive. Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. This rule states:

If scientific, technical, or other specialized knowledge will

assist the trier of fact to understand the evidence or to determine

a fact in issue, a witness qualified as an expert by knowledge,

skill, experience, training, or education, may testify thereto in

the form of an opinion or otherwise, if (1) the testimony is based

upon sufficient facts or data, (2) the testimony is the product of

reliable principles and methods, and (3) the witness has applied

the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Both scientific and nonscientific expert

testimony is subject to the framework set out by the Supreme

Court in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588

(1993), which requires trial courts to make a preliminary

assessment to "determine whether the expert testimony is both

reliable and relevant." Burleson v. Tex. Dep't of Criminal

Justice, 393 F.3d 577, 584 (5th Cir.2004); see Kumho Tire Co.,

Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).

A number of nonexclusive factors may be relevant to the

reliability inquiry, including: (1) whether the technique has

been tested, (2) whether the technique has been subjected to peer

review and publication, (3) the potential error rate, (4) the

existence and maintenance of standards controlling the

technique's operation, and (5) whether the technique is generally

accepted in the relevant scientific community. Burleson, 393 F.3d

at 584.  The reliability inquiry must remain flexible, however,

as "not every Daubert factor will be applicable in every

situation; and a court has discretion to consider other factors it deems relevant." Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir.2004); see Runnels v. Tex. Children's Hosp. Select Plan, 167 Fed. Appx. 377, 381 (5th Cir.2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.' " (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999)). With respect to the determination of relevancy pursuant to Rule 702 and Daubert, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." Bocanegra v. Vicmar Servs., Inc., 320 F.3d 581, 584 (5th Cir.2003). When expert testimony or reports are challenged under Daubert, the Court's role as gatekeeper does not replace the traditional adversary system, or the jury's place within the system. Scordill v. Louisville Ladder Group, L.L.C., 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003). As the Daubert court noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. As a general rule, questions relating to the basis and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration.

United States v. 14.38 Acres of Land, More or Less S. in County, Miss., 80 F.3d 1074, 1077 (5th Cir.1996)(citing Viterbo v. Dow Chemical Co., 826 F.2d 420, 422 (5th Cir.1987)).

Defendant questions the reliability of Hitchcock's methods for formulating his estimate and states that similar methods used by proposed experts in other cases have been deemed unreliable. The methodology used by Hitchcock in this case is similar to the methodology used by the proposed experts in Tardo v. State Farm Fire and Causalty Company, No. 08-1165, 2009 WL 1804766 (E.D. La. June 22, 2009) and Williams v. Allstate Insurance Company, No. 08-0062, 2008 WL 5110604 (E.D. La. Nov. 26, 2008).

In Tardo, the court held that the plaintiffs' proposed expert testimony did not satisfy the requirements of Rule 702 and Daubert. Tardo, 2009 WL 1804766. The proposed expert witness in Tardo interviewed the plaintiff to get the bulk of his information relating to the damage of the property and inspected the property nearly three years after the property was damaged. Id. at *3. Also, at the time he inspected the property, the property had been repaired. Id. at *1.

Similarly, in Williams, the proposed expert witness rendered his reports solely on his visit to the property (more than three years after the property was damaged and after the damage had been repaired) and his interview of the property owners. Id. at *3. In Williams, the court held that these steps were not

7

sufficient to satisfy the requirements for admissible expert testimony. Id. (stating that the opinion was unreliable because it was not based upon sufficient facts or data and was not the product of reliable principles and methods).

Although Hitchcock reviewed photographs of the property, his estimate relied heavily on his inspection of the property, which was substantially repaired more than three years prior to his inspection. Therefore his methodology is similar to those used in Tardo and Williams. This Court does not believe that a reliable estimate can be formed by observing property long after the property has been repaired. See Lightell v. State Farm Fire and Casualty Co., No. 08-4393, 2009 WL 5217087 at *2 (E.D. La. Dec. 31, 2009) (stating "[t]his Court does not find such methods to be reliable"). However, to the extent Hitchcock was able to interview Plaintiff, review the claims file and photographs, **and** inspect the damage that had yet to be repaired, this Court finds that he could have formed a reliable estimate on that portion of the property.

Therefore, **IT IS ORDERED** that State Farm Fire and Casualty Company's **Motion in Limine to Exclude Purported Expert Stephen Hitchcock as Unqualified, Unreliable and Irrelevant (Rec. Doc. 34)** is partially **GRANTED** and partially **DEFERRED**.

Hitchcock's estimate regarding the portion of the property that had been repaired prior to his inspection is hereby

excluded. However, this Court will defer ruling on Hitchcock's estimates relating to the portion of the property that was not repaired prior to his inspection. This Court will allow the parties to submit additional information regarding which repairs had not been completed at the time of the inspection.

New Orleans, Louisiana, this  4th  day of February, 2010.

_____
United States District Judge